IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT D. ALLEN, #252342, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:16-CV-720-MHT-WC |
| | ) (WO) |
| OFFICER M. REESE, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on August 31, 2016 by Robert Allen, an indigent state inmate, challenging an action which occurred at Kilby Correctional Facility on August 22, 2016, and the conditions of his confinement. (Doc. 1 at p. 2). In his complaint, Allen alleges that Officer Reese acted with deliberate indifference to him when he refused plaintiff's request to use the toilet until the institutional "count" had "clear[ed]". (Doc. 1 at pp.7-8). As a result, plaintiff alleges he had a bowel movement in his wheelchair. (Doc. 1 at p. 7). He also alleges that defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Eighth Amendment because his prison dorm does not have sufficient handicapped bathroom access nor does it have sufficient fire exits for wheelchairs. (Doc. 1 at p.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

10).  The named defendants are Officer M. Reese, Warden Phyllis Billups, and Commissioner Jefferson S. Dunn.  Allen seeks monetary damages and injunctive relief in this cause of action.

The defendants filed a special report (Doc. 14, Exs. 1-4) that included relevant evidentiary materials in support of this report, specifically affidavits and prison documents, addressing the claims presented by Allen.   In these documents, the defendants deny they acted with deliberate indifference to Allen's physical needs and deny that they have violated the ADA.  Pursuant to orders of this court, the defendants filed a supplemental special report with exhibits (Doc. 24) and a second supplemental special report with exhibits (Doc. 28), including a CD, which this court has viewed.[2]

After reviewing the special report and exhibits, the court issued an order on November 17, 2016, requiring Allen to file a response to the defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 15).  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 15 at 2–3).  Allen filed an unsworn response to this order (Doc. 16) with attachments made under penalty of perjury. (Doc. 16-1 at 1-11).  Pursuant to the directives of the order entered on November 17, 2016, the

---

[2] By Order dated July 5, 2019, the Court allowed plaintiff to file a response within ten (10) days of his receipt of the second supplemental special report.  This report was filed on July 12, 2019.  Plaintiff has failed to file a response.

court now treats the defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet the evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine

dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment

is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny

5

summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

6

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Allen's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Allen has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  FACTS

In his complaint, the plaintiff alleges that on August 22, 2016, Correctional Officer Reese denied his request to use the toilet until the institutional "count" had "clear[ed]". (Doc. 1 at pp.7-8). As a result, plaintiff alleges he had a bowel movement in his wheelchair. (Doc. 1 at p. 7). Specifically, plaintiff alleges he explained to Reese "that he was a cancer patient . . . [was] in a wheel chair, . . . [had] take[n] chemo-treatment, with medication which cause[d] the need to go to the toilet. Reese told Allen to get out of his face – I don't care, you will not use the toilet." *Id*.

As an exhibit to the special report, the defendants submitted the affidavit of Mario Reese wherein he states as follows:

> On the alleged date in question, on Second Shift's institutional count, I gave a direct order for all inmates in A-Dorm to remain on their assigned beds until the count was cleared. The institutional count is conducted on each shift to ensure no inmates have escaped. After I instructed all inmates to remain on their beds, only then did inmate Allen get off his bed and start towards the bathroom. I gave inmate Allen a direct order to go back to his bed and he replied "No, I don't have too." I gave inmate Allen another direct order to return to his assigned bed until the count cleared and he then complied. Once the count cleared inmates were allowed to

> resume normal activities. Inmate Allen did not report this alleged incident to me. I have no knowledge of inmate Allen having a bowel movement in his chair.

(Doc. 14-3). In his response to the defendants' special report, Allen claims that, after defecating on himself in his wheelchair, defendant Reese denied him the opportunity to shower or to report the incident to the shift office. (Doc. 16 at p. 1). Allen also provides the statements of six other inmates stating that they witnessed part or all of these events. (Doc. 16-1 at p. 5-10).

Allen also alleges that defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., and the Eighth Amendment because his prison dorm does not have sufficient handicapped bathroom access or sufficient fire exits for wheelchairs. (Doc. 1 at p. 10). Specifically, he alleges that the

> "restricted front exit is to {sic} small for wheel chairs to safely exit. The rear exit door can't be open {sic} from inside by officials for fire exiting. There's only one wheel chair ramp and it is blocked by overcrowding of beds, tables, fans, and mass numbers of inmates assign to A-Dorm."

(Doc. 1 at p. 10). He also alleges "that A-Dorm don't {sic} have the ADA means to provide for the mass numbers of ADA inmates house {sic} in A-Dorm for toilets." Further, in his response to the defendants' special report, Allen claims that "there is one handicap toilet and everyone uses it when it works . . . I can not wait in line for 30 minutes and sometimes more." (Doc. 16-1 at p. 3).

As an exhibit to the special report, the defendants submitted the affidavit of Warden Phyllis Billups, wherein she states that "[w]heelchair accessible toilets are available for inmates to use in A Dorm. . . . [and] [t]here is an emergency evacuation plan established at Kilby should inmates need to be evacuated." (Doc. 14-4 at p.2). The defendants also submitted as an exhibit to the second supplemental special report a CD with photographs and video of Dorm A pertaining to Allen's claims about wheelchair access in Dorm A. The Court has viewed the photographs and video and concludes that they conclusively demonstrate the following:

1) An inmate in a wheelchair of normal width can enter and exit Dorm A from the main hallway.

2) An inmate in a wheelchair of normal width is able to proceed easily along the walkway between bunks in Dorm A and to and from his own bunk.

3) An inmate in a wheelchair of normal width can navigate the fire exit door at the rear of Dorm A.

4) The rear fire exit door is capable of being opened by officers from inside the dorm (the key to which is kept at all times on a "key board" in the Dorm A cubicle, which is manned 24 hours a day and 7 days a week).

5) Although there is only a single ramp that leads from the rear fire exit door to the grassy area behind Dorm A, that ramp is nearly 5 feet wide and is wide enough for a wheel chair and inmates walking side by side to safely exit using the ramp in the event of a fire or other emergency.

(Doc. 28-1).

### IV. ABSOLUTE IMMUNITY

To the extent Allen requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held:

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress'

> intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Thus, the Court will now address the plaintiff's claims brought against defendants in their individual capacities.

## V.  DISCUSSION

### A.  Deliberate Indifference

**1. Standard of Review.**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id.* at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099.  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively

11

unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette*

12

v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.  *Farmer*, 511 U.S. at 837.

When considering a plaintiff's Eighth Amendment claim for exposure to human waste the "frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered when analyzing the objective component." *Grimes v. Thomas,* 2014 WL 554700 *7 (N.D. Ala. Feb. 12, 2014) citing *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S. Ct. 2565, 2571, 57 L.Ed.2d 522 (1978).  Indeed, an inmate's exposure to human waste can be sufficiently serious enough to satisfy the objective component of an Eighth Amendment claim.  *Id.* (citing *McBride v. Deer,* 240 F. 3d 1287, 1292 (10th Cir. 2001)).  "Although 'courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste,' *Fruit v. Norris*, 905 F. 2d 1147, 1151 (8th Cir. 1990), it is also apparent that 'toilets can be unavailable for some period of time without violating the Eighth Amendment.' *Johnson v. Lewis*, 217 F. 3d 726, 733 (9th Cir. 2000)." *Grimes,* 2014 WL 554700 *7.  Moreover, the United States Supreme Court recognized an Eighth Amendment violation where the inmate plaintiff was confined to a hitching post for seven hours during which time he was deprived of any water or bathroom breaks.  *Hope v. Pelzer,* 536 U.S. 730, 738 (2002).

13

**2. Analysis**

The plaintiff alleges that he was denied access to the toilet on August 22, 2016, by Officer Reese. He admits that the denial occurred during the institutional count and does not allege that his access was denied following conclusion of the count. (Doc. 1 at pp. 7-8). Indeed, Officer Reese confirmed that the inmates' "normal activities" were allowed following the count. (Doc. 14-3 at p. 2). However, plaintiff complains that this wait caused him to defecate on himself in his wheelchair and that he was not allowed to take a shower. The plaintiff does not state the specific amount of time he was denied toilet access, nor does he state the amount of time he was prohibited from showering. (Doc. 16 at p. 1). The plaintiff also alleges that he is denied access to the bathroom on a regular basis in Dorm A because he has to "wait in line for 30 minutes and sometimes more" to use the handicapped bathrooms. (Doc. 16-1 at p. 3).

The plaintiff's allegations make clear that he complains about a single incident that resulted in his exposure to his own waste and that on this occasion he was denied a shower, but he does not state the amount of time that elapsed. He also complains generally about the time he has to wait in line to use the handicapped toilets, alleging a wait for 30 minutes or more. (Doc. 16-1 at p. 3). Thus, in these instances, the frequency and the duration of the alleged deprivations are not serious enough to establish an Eighth Amendment violation. *Grimes,* 2014 WL 554700 *5-7 (finding no Eighth Amendment violation where, due to installation of a flushing device, Plaintiff's toilet regularly contained his cellmate's feces and urine and Plaintiff had to choose between waiting an hour or more to flush the toilet or to use the polluted toilet and have his cellmate's waste splash on him).

Indeed, Eighth Amendment violations "typically require the presence of intolerable conditions, far worse than those Plaintiff alleges." *Id.* at *7 (collecting cases); *see McCord v.*

14

*Maggio*, 927 F. 2d 844, 848 (5th Cir. 1991) (finding Eighth Amendment violation where a prisoner was forced to live and sleep for two years in an unlit cell with sewage backup and roach infestation); *McBride,* 240 F. 3d at 1292 (finding Eighth Amendment violation where inmate was forced to remain in a feces-covered cell for three days); *DeSpain v. Uphoff,* 264 F. 3d 965, 974 (10th Cir. 2001) (finding Eighth Amendment violation where, for thirty-six hours after a riot, the water overflowed to standing depth of four inches and prisoners urinated into the water where feces and uneaten food floated). Furthermore, the Eleventh Circuit has recognized the existence of an Eighth Amendment violation where the plaintiff alleged "he was denied the ability to use the bathroom or clean himself for a full two days" and "he was 'forced to lie in direct and extended contact with this own feces without the ability to clean himself, while confined to a hospital bed in maximum security constraints.'" *Brooks v. Warden Powell*, 800 F.3d 1295, 1305 (11th Cir. 2015). Accordingly, the Court concludes that the plaintiff's allegations fail to satisfy the objective element of an Eighth Amendment violation and that summary judgment is therefore due to be granted on this claim. *Caldwell*, 748 F.3d at 1099.

Plaintiff also alleges that his Eighth Amendment rights are violated because being confined to a wheel chair and due to the "mass over crowding of inmates in 'A-dorm' Allen is trapped with no way to escape, the back doors lock and unlock from the outside-to violate fire code regulations" (Doc. 1 at p. 9) and because "the restricted front exit is too small for wheel chairs to safely exit." (Doc. 1 at p. 10). In response to these allegations, the defendants filed a CD containing photographic and video evidence. As set forth above, the Court has viewed the photographs and video evidence and concludes that they conclusively demonstrate the following:

1) An inmate in a wheelchair of normal width can enter and exit Dorm A from the main hallway.

2) An inmate in a wheelchair of normal width is able to proceed easily along the walkway between bunks in Dorm A and to and from his own bunk.

3) An inmate in a wheelchair of normal width can navigate the fire exit door at the rear of Dorm A.

4) The rear fire exit door is capable of being opened by officers from insider the dorm (the key to which is kept at all times on a "key board" in the Dorm A cubicle, which is manned 24 hours a day and 7 days a week).

5) Although there is only a single ramp that leads from the rear fire exit door to the grassy area behind Dorm A, that ramp is nearly 5 feet wide and is wide enough for a wheel chair and inmates walking side by side to safely exit using the ramp in the event of a fire or other emergency.

(Doc. 28-1).

The United States Supreme Court held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380. Indeed, the *Scott* case made clear that, when video evidence "utterly discredited" a version of the facts on summary judgment, the lower courts "should have viewed the facts in the light depicted by the videotape." *Id.* at 380-81. Accordingly, the Court concludes, based upon the undisputed facts in this case, that the plaintiff's allegations fail to demonstrate a "'strong likelihood' of injury, 'rather than a mere possibility'"; thus, the defendants' alleged inactions do not "constitute deliberate indifference." *Brooks,* 800 F.3d at 1301. Accordingly, summary judgment is due to be granted on the plaintiff's Eighth Amendment claim that he is unsafely housed in Dorm A because of the lack of wheelchair access to exits.

16

### B. Americans with Disabilities Act

The plaintiff also alleges that the defendants are violating the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), because his prison dorm does not have sufficient handicapped bathroom access or sufficient fire exits for wheelchairs. (Doc. 1 at pp. 9-10). He seeks declaratory and injunctive relief. Specifically, he asks the court to order a full inspection of Kilby by the state fire marshal and a federal inspector. He also asks the court to order the defendants to provide "transport-transfer which provide wheelchair needs." Additionally, he asks the court to "declare A-Dorm to be in violation of Allen's ADA needs for fire, health security, and safety needs." Finally, he asks the court to require defendants to "answer and show cause why Allen is housed in A-Dorm which fails to meet and provide the minimum standards for the mass numbers who are ADA wheel chair dependent, for health and safety." (Doc. 1 at p. 11-12).

In order to demonstrate a denial of access claim under Title II of the ADA,[3] the plaintiff must prove that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) the exclusion, denial of benefits, or discrimination was because of his disability. *See Gastine v. Secretary, Florida Dept. of Corrections,* 502 Fed. App'x. 905, 910 (11th Cir. 2012) (affirming summary judgment for the defendants where plaintiff prisoner failed to demonstrate that he was unable to access certain areas of the facility due to his disability). In the instant action, the plaintiff admits that he has access to handicapped bathrooms in his dorm but that he might have to wait thirty minutes or more to use the bathroom. (Doc. 16-1 at p. 3). Thus, the court concludes that the plaintiff has failed to

---

[3] Title II of the ADA applies to prisoners in state correctional facilities. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

demonstrate a denial of "services" with respect to his claim pertaining to handicapped bathroom access to support an ADA claim. *Id.* Furthermore, because the court has previously concluded that the plaintiff fails to establish the defendants acted with deliberate indifference by denying him access to handicapped bathrooms, the court now concludes that the plaintiff cannot demonstrate the requisite discriminatory intent to support an ADA claim. *See Wilson v. Smith,* 567 Fed. App'x. 676, 679 (11th Cir. 2014).

With respect to Plaintiff's claim that his rights under the ADA are violated because his dorm does not have sufficient fire exits for wheelchairs, he specifically alleges:

> "restricted front exit is to {sic} small for wheel chairs to safely exit. The rear exit door can't be open {sic} from inside by officials for fire exiting. There's only one wheel chair ramp and it is blocked by overcrowding of beds, tables, fans, and mass numbers of inmates assign to A-Dorm."

(Doc. 1 at p. 10). In response, the defendants have submitted as an exhibit to the supplemental second special report a CD with photographs and video of Dorm A pertaining to Allen's claims about wheelchair access; the photographs and video conclusively demonstrate that Dorm A wheelchair inmates have access to exits in case of a fire or other emergency. (Doc. 28-1). Accordingly, the court concludes that the plaintiff has failed to demonstrate a denial of "services" with respect to his claim pertaining to emergency exit access for wheelchair bound inmates which could support an ADA claim. *Id.* Furthermore, because the court has previously concluded that the plaintiff fails to establish the defendants acted with deliberate indifference by denying him access to emergency exits, the court now concludes that the plaintiff cannot demonstrate the requisite discriminatory intent to support an ADA claim. *See Wilson,* Fed. App'x. at 679. Accordingly, the court concludes that summary judgment is due to be granted on the plaintiff's ADA claims.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **August 16, 2019**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 2nd day of August, 2019.

                                             /s/ Wallace Capel, Jr.
                                             WALLACE CAPEL, JR.
                                             CHIEF UNITED STATES MAGISTRATE JUDGE